**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ACS International Products LP,<br><br>Plaintiff,<br><br>v.<br><br>State Automobile Mutual Insurance Company,<br><br>Defendant. | No. CV-19-00549-TUC-DCB<br><br>**ORDER** |

The Court denies the Plaintiff's Motion for Extension of Time for all discovery to allow Plaintiff to file a motion to compel the deposition of the Defendant's attorney, John DiCaro. (Docs. 78, 80.) The request for extending discovery to allow the Plaintiff's damage expert, Thomas Selling, to supplement his expert report regarding property loss (Doc. 78) is denied as moot. *See* (Supplement to Plaintiff's Motion to Extend Discovery (Doc. 80) at 2 (explaining report has been supplemented)). The Court denies the Defendant's Motion to Preclude use of Inadvertently Disclosed Privileged Information (DiCaro Billing Analysis Report[1]). (Doc. 82.)

The Plaintiff, ACS Industries, manufacturers decorative, organic fillers made from polyester-resin granulates. Plaintiff alleges a hailstorm damaged the roofs of its manufacturing plant and office. Initially, Marcor Platt, engineer, with Donan Engineering, representing the Defendant State Auto Insurance reported the roof damage was due to hail and covered under the policy. Subsequently, the Defendant secured a second opinion which

---
[1] The disclosure was a Billing Analysis Report, which the Court refers to hereinafter as billing statements.

was that the hail damage was old and occurred during a time-period outside the coverage period. Plaintiff sues for bad faith failure to pay the insurance claim.

"'A first-party bad faith claim arises from the fact that the insurer has a quasi-fiduciary duty to act in good faith toward its insured' and 'imposes on the insurer a broad obligation of fair dealing ... and a responsibility to give equal consideration to the insured's interests.'" (Motion Re: DiCaro Deposition (Doc. 80) at 2, 16 (quoting *Zilisch v. State Farm Mutual Ins*. Co., 995 P.2d 276, 279-80 (Ariz. 2000); *see also Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986). The attorney must be acting in the role of legal counsel for attorney-client privilege to attach. If the attorney is acting in some other role, as an ordinary businessman, for example as a claim adjuster, the privilege may not be properly claimed. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977); *see also Samaritan Foundation v. Goodfarb*, 862 P.2d 870, 874 (Ariz. 1993) (For the attorney-client privilege to apply, the attorney must be acting in the role of legal counsel). In other words, to the extent DiCaro acted as a claim adjuster, claims process supervisor, or claim investigation monitor, and not as a legal adviser, the attorney-client privilege does not apply. *Harper v. Auto-Owners Ins. Co*., 138 F.R.D. 655, 671 (S.D. Ind. 1991).

Defendant, State Auto, argues that it had reason to believe the Plaintiff's claim was fraudulently submitted, and the Donan Engineering report was inconclusive. Therefore, it was appropriate for it to hire DiCaro in anticipation of litigation. "Numerous courts have held that litigation is anticipated when the insurer discovers facts revealing that the loss at issue was likely caused by its insured's alleged bad conduct." (Response (Doc. 81) at 9 (citing *Lett v. State Farm Fire & Casualty Co.,* 115 F.R.D. 501, 502-03 (N.D. Ga. 1987) (litigation was anticipated when initial investigation revealed evidence that the insured had committed arson). *See also Chambers v. Allstate*, 206 F.R.D. 579 (S.D.W.Va. 2002) ("substantial and imminent" or "fairly foreseeable" threat of litigation arises when it becomes evident to insurer that losses were caused by arson and insured was involved); *Carver v. Allstate Ins. Co*., 94 F.R.D. 131 (D.C.Ga. 1982) (same). The only involvement

DiCaro had unrelated to litigation was to refer State Auto to Todd Springer, an engineer with Augspurger Komm Engineering ("AKE"), to conduct the engineering assessment necessary for Defendant to process Plaintiff's claim. State Auto denies DiCaro had any involvement in the unbiased claim investigation conducted by Springer.

## Motion to Extend Discovery

State Auto will be unduly prejudiced if ACS is allowed to turn State Auto's trial counsel into a fact witness. As noted by Defendant, to overcome Defendant's attorney-client privilege, "ACS would have to demonstrate that its substantial need outweighs State Auto's interest in maintaining confidentiality." (Response (Doc. 81) at 14 (citing *Samaritan Foundation v. Superior Court*, 173 Ariz. 426 (App. 1992)). Plaintiff cannot make this showing because it has deposed Springer, and State Auto's claim adjusters, Wakefield and Myers. ACS's "need" to depose attorney DiCaro to gain information Plaintiff already possesses does not outweigh the prejudice it would cause to State Auto if its trial counsel was forced to recuse himself from representation. At trial, the Plaintiff is free to argue that the Donar Report was not ambiguous, and Defendant acted in bad faith when it did not pay the claim without conducting further investigation.

Springer's deposition and case notes reflect the details of the information imparted to him before he conducted his investigation. Meyers and Wakefield testified at their deposition that they would not impart some of the information given to Springer because it could bias his investigation. They need not be standard of care experts to testify to the standards and procedures they would use as experienced and trained adjusters for State Auto. Defendant's assertion that their testimony conflicts with testimony from standard of care experts does not make it inadmissible, but only goes to the weight of the evidence. Plaintiff has sufficient evidence to argue the Springer engineering report was biased without deposing DiCaro.

The Motion to Extend Discovery is denied as untimely because it was filed on April 28, 2021, two days before discovery was set to end on April 30, 2021. Plaintiff seeks additional time to file a motion to compel the deposition of Defendant's attorney,

DiCaro, in response to Defendant's assertion of attorney-client privilege. At the Court's request, the Plaintiff supplemented the motion with its arguments for compelling DiCaro's deposition. The issue has been fully briefed, and the Court finds that the Plaintiff was not diligent in seeking an extension of the discovery deadline on the eve of its expiration. The issue arose when Plaintiff sought to take DiCaro's deposition on February 11, 2021, and Defendant asserted attorney-client privilege on February 16, 2021.

Once the Court enters a scheduling order, the "schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4), Fed. R. Civ. P. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* ("carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief"). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id*. "If that party was not diligent, the inquiry should end." *Id*.

Plaintiff fails to address why they did not file a motion to compel in February or early March at the latest. Diligence was especially important here because the Court had granted multiple extensions of time to complete discovery from October 10, 2020 to December 1, 2020, to March 1, 2021, and to April 30, 2021. The Court denies the extension because Plaintiff waited until just days before the close of discovery to request additional time. Federal courts deny extension requests brought on the eve of the close of discovery. *See United States ex rel. Gohil v. Sanofi U.S. Services Inc*., 2020 WL 1888966, at *4 (E.D. Pa. Apr. 16, 2020) (collecting cases and holding "district court is well within its discretion when it denies untimely discovery requests that could have been made at an earlier date").

**Motion to Preclude Inadvertently Disclosed Attorney-Client Privileged Information**

The Defendant, State Auto, seeks to preclude the Plaintiff, ACS, from using the "inadvertently" disclosed DiCaro billing statements which are attorney-client privileged communications. According to State Auto, it inadvertently failed to redact[2] the billing statements in its Claim File but marked them as privileged. Without disputing the claim of privilege, ACS "took those privileged documents and published them in a motion, [the Motion to Extend Discovery to depose DiCaro.] . . . ACS thus flagrantly and willfully disregarded evidentiary, procedural, and ethical rules, which direct ACS to first dispute State Auto's claim of privilege with this Court before unilaterally publishing the privileged information and/or to withhold the inadvertently disclosed privileged information before a dispute over privilege is resolved." (Motion Re: Preclude (Doc. 82) at 2.)

Defendant seeks sanctions against ACS as follows: 1) preclusion from using the protected information and any inferences, including an order to strike its use in its "Supplement" [Doc. 80]; 2) pay State Auto's reasonable attorneys' fees and costs incurred in defending the willful violation of attorney-client privilege; and 3) any other relief deemed appropriate by the Court.

The obvious problem with State Auto's argument is that the billing statements reflect involvement by DiCaro with Springer beyond simply making the referral to State Auto, and the alleged privileged communications with Spinger were made during the time period that Springer was allegedly conducting the unbiased independent claim investigation for State Auto. The billing statement in combination with the Springer notes arguably supports Plaintiff's assertion that DiCaro oversaw the State Auto claim investigation and tainted its impartiality.

The Springer Notes reflect the following:

June 6, 2019: Conference call with Mike, Mike and John DiCaro reflecting an overview discussion of the claim, including that the Plaintiff had made

---

[2] The Defendant uses the term "redact" to mean it failed to omit the billing statements from the Claim File rather than as commonly used to mean to omit portions of the billing statements but not the billing statements in their entirety.

two claims, with one claim made for hail damage in 2016, which was denied due to lack of coverage, and the second on September 2, 2018 DOL. The insured had hired a Private Adjuster (PA), John Morris. An inspection was going to be conducted by the claim adjuster, assumably Wakefield, and the PA. Spinger was told about the Donan engineering inspection and report identifying hail damage attributed to the September storm in part and in part to a 2015 storm. The roof was described in detail, such as mod-bit with granulated cap sheet; warehouse has no coating; office has elastomeric coating, etc. State Auto had concluded that there was no clarity regarding damage; where it was, what it was, etc. At the time of the conference call, the Insured Plaintiff did not have a copy of the Donan report and things had gotten confrontational with Morris, but Wakefield had calmed things down.

6/11/2019: Phone call to Mr. Wakefield after inspection to discuss the results: Springer was "told to go through DiCaro. E-mail correspondence with DiCaro to set-up conference call for 6/13/22. (Springer was deposed 3/25/21 and did not recall the 6/13/22 DiCaro conference call.)

(Motion Re: DiCaro Depostion (Doc. 80) at 8.)

The DiCaro billing statements reflect the following:

06/03/2019: Several communications with Claims Representative for State Auto, Mike Wakefield, regarding case status and obtaining an expert to inspect the building where the loss occurred.

06/03/2019: Communications with our expert, Todd Springer, regarding his assignment and inspecting the property and building where the loss occurred, and the report of prior expert, Donan Engineering.

06/03/2019: Begin review of Donan Engineering report by Marco Platt, in order to discuss the same by our expert, Todd Springer, so he may investigate the loss and evaluate the opinions of Platt and the hailstorm allegations by the insured, ACS.

06/05/2019: Communications with possible expert witness, Todd Springer, who we may retain to inspect the insured's, ACS, property, as well as evaluate and rebut the Donan report, who is an expert who was retained prior to Mr. Springer, in order to defend claim.

06/06/2019: Prepare for telephonic conference with Mike Wakefield and Mike Myers of State Auto and our expert, Todd Springer, to discuss all aspects of this claim and having Mr. Springer involved in the investigation and inspection of the premises relating to hail damage, by analysis and review of the former engineer's, Donan Engineering, report.

06/06/2019: Participate in telephonic conference with Mike Wakefield and Mike Myers of State Auto and our expert, Todd Springer, to discuss all aspects of this claim and involving Mr. Springer in the investigation of hail damage at the insured's residence.

06/11/2019: Communications with our expert, Todd Springer, regarding his work on hail related and damage cases, in order to defend claim, evaluate the insured's, ACS, loss, and a response to the report of Marco Platt of Donan Engineering.

> 06/13/2019: Prepare for telephonic conference with expert, Todd Springer, and State Auto representative, Mike Myers, to discuss all aspects of this claim, the Marco Platt report, the building of the insured, ACS, with potential and possible hail damage, and the work we would like Mr. Springer to do and inspect that damage.
>
> 06/13/2019: Telephonic conference with our expert, Todd Springer, and State Auto representative, Mike Myers, regarding claim status, inspection by Mr. Springer of the insured's, ACS, building, and claimed hail damage, in order to evaluate claim and provide analysis of the alleged damage.
>
> 06/17/2019: Prepare for communications with State Auto Representatives, Mike Wakefield and Mike Myers, regarding inspection by our expert, Todd Springer, of the insured's property, by review and analysis of Donan Engineering's, roofing expert, 20+ page report.
>
> 06/17/2019: Telephonic conference with State Auto representatives, Mike Wakefield and Mike Myers, regarding case status, the findings and opinions of our expert, Todd Springer, and options to handle this matter going forward.

*Id.* at 10-11; (Billing Analysis Report Bates# 413-415 (Doc. 80-3) at 69-70).

In combination, the Springer notes and billing statements reflect the time period from when Springer was hired by State Auto to conduct the "independent" claim investigation and issuance of his claim investigation report, *Id.* (Doc. 80-3) at 5. July 18, 2019. On July 23, 2019, five days after receiving the Springer Report, State Auto denied the Plaintiff's claim.

Defendant has Springer wearing two hats, simultaneously, he was conducting an unbiased independent claim investigation and acting as the defense expert for State Auto in anticipation of litigating the denial of the Plaintiff's claim. DiCaro cannot wear these two hats without jeopardizing State Auto's attorney client privilege over the DiCaro-Springer communications. The Court does not, however, reach the question of whether the privilege was destroyed because it was waived. State Auto disclosed the billing statements with the Claim File it released to the Plaintiff.

The January 2020 Privilege Log does not include any mention of the billing statements for any DiCaro communications with Springer, the Bates #413-415 documents. The April 2020 Privilege Log adds the Bates # 413-415 documents, dated August 29, 2019, and describes the privilege as: "Attorney Client Privilege/Post Bad Faith Law Suit." (Motion to Preclude (Doc. 82-2) at 4.) The April Privilege Log suggests

that the billing statements relate to attorney client communications after State Auto denied the claim which occurred on July 23, 2019. The billing statements at issue were for an earlier time period when Springer was allegedly conducting the unbiased independent claim investigation for State Auto.

According to Rule 26, a party withholding information as privileged "must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The April 2020 Privilege Log misrepresented the time period covered by the billing statements as being after State Auto denied the claim, not for work performed by DiCaro during the claim investigation. Only because Plaintiff had the allegedly inadvertently disclosed documents, Bates # 413-15, could it recognize the nature of the communications reflected in the billing statements was for a time period when Springer was supposed to be conducting an independent claim investigation.

The billing statement was disclosed as part of the Claim File in January 2020, without any claim of privilege. On April 7, 2020, the Defendant revised the Privilege Log and added the billing statements, Bates #413-415. The Defendant took no further action to bring the inadvertent disclosure to the Plaintiff's attention.

Fed. R. Civ. P. 26(b)(5)(B), which requires: "If information produced in discovery is subject to a claim of privilege . . ., the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved."

Importantly, nothing happened subsequent to the April 7, 2020 revised Privilege Log. The Plaintiff did not return the billing statements, and Defendant did nothing to get

them back. The Court finds that simply adding the disclosed billing statements to the Privilege Log in April was insufficient notice of the inadvertent disclosure of the billing statements and the Defendant's claim of privilege.

The Court finds that the Defendant waived any claim of attorney-client privilege over the billing statements because they failed to include them on the January 2020 Privilege Log and in fact disclosed them to Plaintiff in the Claims File. The April 2020 Privilege Log did not accurately describe the asserted privilege for the billing statements because it suggested they were for work performed by DiCaro after State Auto denied the claim instead of during a time when Springer was supposed to be conducting an independent claim investigation. The Defendant's April 2020 Privilege Log did not provide the notice envisioned in Rule 26 of an inadvertent disclosure. The Defendant knew by April 2020 that it had disclosed the billing statements. Defendant knew by February 2021 that Plaintiff wanted to depose DiCaro related to communications with Springer during the time period disclosed in the billing statements. Defendant, however, did not assert inadvertence of the disclosure or attorney client privilege until after the Plaintiff used the billing statement as evidence to support its assertion that DiCaro was supervising what was supposed to be an unbiased claim investigation by Springer.

The Court finds that State Auto fails to establish the disclosure of the billing statement information was inadvertent. "To claim an inadvertent disclosure, the party claiming inadvertence must demonstrate it took reasonable steps to prevent disclosure – those steps are not present in this matter." *Id.* at 16. The Court considers the following factors: (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error, (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the "overriding issue of fairness." *Id.* at 17 (citing *Hartford Fire Ins. V. Garvey*, 109 F.R.D. 323, 331-32 (N.D. Cal. 1985) (finding federal courts apply these factors). As noted by the Plaintiff, the disclosure was made in the Claim File, which assumably was closely scrutinized by counsel before being disclosed. *Id.* at 16-18. All of the factors tip against the Defendant, and it carries the burden to invoke the privilege. *Clarke v. American Commerce*

*National Bank*, 974 F.2d 127, 129 (9th Cir.1992); *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir.1990). The Court finds the billing statement disclosure waived the privilege, and the Defendant fails to make a showing of inadvertence.

Pursuant to the case management schedule, the Defendant filed a Motion for Summary Judgment on June 9, 2021. The Plaintiff filed a Motion to Extend the time to respond to the summary judgment motion until after it can depose the Defendant's attorney, DiCaro, pursuant to Fed. R. Civ. P.56(d), which provides for such an extension if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The Plaintiff asserts that the DiCaro deposition is necessary to establish punitive damages, which require evidence of something more than bad faith. The Court affirms its denial to extend discovery to all Plaintiff to depose DiCaro for all the reasons discussed above and because the Plaintiff had the billing statements as of January 2020. The Court will allow an extension of time to file the Response to accommodate briefing the issues being ruled on in this Order.

**Accordingly,**

**IT IS ORDERED** that the Motion to Extend Discovery (Docs. 78 and 80) is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Preclude Using Inadvertently Disclosed Privileged Information (DiCaro billing statements) (Doc. 82) is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Extend the Time to file a Response to the Defendant's Motion for Summary Judgment (Doc. 87) is DENIED in part and granted in part.

*///*
*///*
*///*
*///*
*///*

**IT IS FURTHER ORDERED** that within 30 days of the filing date of this Order, the Plaintiff shall file the Response to the Defendant's Motion for Summary Judgment.

Dated this 6th day of July, 2021.

_____
Honorable David C. Bury
United States District Judge