**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ACS International Products LP,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>State Automobile Mutual Insurance Company,<br><br>　　　　　Defendant. | No. CV-19-00549-TUC-DCB<br><br>**ORDER** |

The Court denies summary judgment and directs the parties to file a Joint Proposed Pretrial Order.

### A. Background

Plaintiff, ACS International Products, LP (ACS International), manufactures fillers for the countertop and flooring industry. Dorfner Holding (Dorfner), a German company, purchased Arizona Cultured Stone, then owned by Jim and Greg Novak, (ACS Novak) in August 2017. As part of the purchase agreement, Guy Mattern, V.P. of Operations and Norman Franzen, Controller, stayed on with ACS International. Brian O'Neil was ACS's insurance agent before and after the acquisition, at the time of the alleged loss, and when the claim was filed. Prior to the acquisition in August of 2017, Defendant State Auto and Dorfner conducted several inspections of the property, and Dorfner required ACS Novak to install a new roof vent in July 2017. "After ACS received new ownership and new name, it became insured with State Auto in 2017." (MSJ (Doc 84) at 3 (citing DSOF ¶ 11).

The Plaintiff alleges that on September 2, 2018, a hailstorm hit the company's property causing roof damage. The Plaintiff filed a claim with Defendant, which was denied. The Plaintiff alleges breach of the insurance contract and bad faith and seeks punitive damages. The effective policy coverage period for the alleged date of loss, September 2, 2018, was August 9, 2018, to August 9, 2019.

State Auto seeks summary judgment because "ACS [] cannot link the alleged hail damage to the September 2018 storm—the only storm that occurred within the policy's coverage—because several hailstorms previously impacted ACS's property and four engineering firms were unable to agree which hail damage was caused by which storm." (MSJ (Doc. 84) at 1.) According to State Auto, an "initial roof inspection revealed old hail damage, [therefore] State Auto retained Donan Engineering to date the damage. The report provided by Donan Engineering, however, was inconclusive and inconsistent," *id*. warranting a second inspection and that "second engineering firm concluded that no damage was caused during the policy coverage." *Id*. at 2.

Defendant asserts that "[b]ecause the cause of ACS's property damage is fairly debatable based on State Auto's entire investigation, State Auto had a reasonable basis to deny ACS's claim," thus "State Auto should be granted summary judgment on both ACS's causes of action." As there is no evidence even of bad faith, "ACS's demand for punitive damages should also be denied." *Id.* 2.

### B. Summary Judgment Standard

Summary Judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.56(c). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex, Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). When the movant meets its

initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material; a fact is material if it might affect the outcome of the suit under the governing law, and that the dispute is genuine. In other words, the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

The nonmovant does not need to establish a material issue of fact conclusively in its favor. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). It need only "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); Fed. R. Civ. P. 56(c)(1).

At summary judgment, it is not for the judge to determine the truth of a matter asserted, to weigh the evidence, or to determine credibility, but only to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. 248-49. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id*. at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). The movant carries the burden of showing that there is no genuine issue of material fact, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

### C. Material Issues of Fact: Breach of Contract and Bad Faith Claims

1. The hailstorm claims.

Sometime around June 2018, Plaintiff allegedly noticed that a "new" roof vent, installed in 2017 when ACS International purchased the business, was dented due to hail damage. In July 2018, the Plaintiff filed a hail-damage claim with a loss date of June 16, 2018. By email, July 11, 2018, Defendant's claim adjuster, Matthew Romero, sent a

1  CoreLogic hail-storm report to the Insurance Broker, Brian O'Neil, which reflected no hail
2  falling at the property on June 16, 2018. According to Mr. O'Neil, the only significant hail
3  event shown there was on August 22, 2015, when one-inch hail fell at the property. Mr.
4  O'Neil communicated this information to ACS International. (MSJ, SOF, Ex. O'Neil
5  Depo. at 44 (Doc. 85-2) at 10-11.)[1] According to Mr. Romero, the Plaintiff failed to pursue
6  this claim; he was unable to coordinate a site-inspection. Mr. Romero considered it a non-
7  pursuit claim and closed it. (MSJ, SOF, Ex. H: Romero Depo. (85-2) at 160; Depo. at 119.)

It is undisputed that the 2015 hailstorm was prior to ACS International's acquisition of ACS Novak, and that at that time ACS Novak was insured by EMC Insurance Wahad, not State Auto. (MSJ, SOF, Ex. O'Neil Depo. at 41, 43 (Doc. 85-2) at 10-11.)

Plaintiff filed the claim at issue in this case on March 12, 2019, alleging a loss date of September 2, 2018, under the policy effective August 9, 2018, to August 9, 2019.

This time, Mr. Romero conducted a site inspection. He met with John Morris, a claim adjuster hired by Plaintiff, and Josh Mattern,[2] a roofing contractor. (MSJ, SOF, Ex. H: Romero Depo. at 92 (Doc. 85-2) at 146.) He observed hail damage but believed it to be old hail damage. *Id.* at 99; 149. He was told about the vent cover replaced in 2017. *Id.* at 100; 150. There was hail damage on soft metal vents. *Id.* Based on weather data, he confirmed that there was a hail event that matched what he was seeing on the roof: "Like larger hail," i.e., "over one inch." *Id.* at 102; 152. According to Mr. Romero this event occurred in 2015. The weather data reflected an event within a mile radius of the property on the date of loss but not at one inch or larger. *Id.* at 103-104; 153-154. He considered the benchmark report *id.* at 103; 153, which reflected a hail event on September 2, 2018, at the property with an estimated 50% probability of hail size at .75. (MSJ, SOF, Ex. D (Doc. 85-1) at 91, 93.)[3]

---

[1] Deposition citations include parallel CM/ECF page citations.
[2] Josh Mattern is related to Guy Mattern.
[3] The Court's review of the various weather reports relied on by the parties has found them to all similarly reflect that they "attempt" to be as accurate as possible in reporting significant hail events at specific property locations and progressing outward at one-mile and three-miles away, with the importance being one-inch or more hail events because "significant damage to real property such as roofing materials does not occur until hail stones reach at least 1" in diameter." (MSJ, SOF, Ex. N: Springer Report (Doc. 85-4) at

Plaintiff's adjuster, Mr. Morris, provided his hail report data to substantiate the claim that hail over one inch hit the property on 9/2/18, Romero Depo. at 103; 153, with hail sized at 1.25," and hail hit the property on August 22, 2015, size 1.50. (Resp, SOF, Ex. 10 NEXRAD Interactive Hail Maps (Doc. 90-7) at 13.) Initially, Mr. Romero was going to schedule a second appointment to walk the roof with a roofing contractor. *Id.* at 96; 148. Mr. Romero, however, had some concerns about the claim because of the prior claim Plaintiff filed but did not pursue. *Id.* at 119; 160. After Mr. Romero discussed the case with his manager, Defendant decided an engineer should inspect the roof rather a roofing company. *Id.* at 120; 161.

2. Donan Engineering Investigation and Report

Subsequently, State Auto sent out its preferred vendor, Donan Engineering, Engineer Marcor Platt, S.E., P.E., to conduct a site study and prepare a report. "The purpose of the study was to determine whether the roof surfaces, metal surfaces, and/or painted surfaces were damaged due to hail impact, and whether the hail impact occurred after August 1, 2017." (MSJ, SOF, Ex. E: Donan Report at 1 (Doc. 85-2) at 3.) Like Mr. Romero, Mr. Platt inspected the property accompanied by John Morris and Josh Mattern, who were joined by Guy Mattern and Louis Larrasco from ACS International. He interviewed ACS International employees, including Mattern who reported that hail 1 ¼ inches hit the property on September 2, 2018, and he noticed twice as many roof leaks throughout the building following the hailstorm and that there was damage to the office rollup doors, heating, ventilating, and air conditioning (HVAC) units, and soft metal vents. *Id.* at 4. Mr. Larrasco, who lived less than ½ mile from the property, reported golf-ball-sized hail at his property on that day, it was the largest hail he had seen in four years and prior hail was pea-sized. *Id.* at 5. Josh Mattern reported a vent was installed on the north side of the manufacturing building over the curing oven in 2017 after the building was purchased and provided documentation of the installed vent. *Id.*

---

18.)

Mr. Platt reported dents up to one inch and over on various surfaces, some clean and some not, which indicates whether a hit is new or old. He distinguished the dents by size and age. Importantly, he reported dents up to 1 inch wide on rooftop metal vent caps, "including in the vent installed in 2017 (photos 50 and 53)." *Id.* at 6.

Mr. Platt consulted historical weather data for the property from 2015-2018, using the National Oceanic and Atmospheric Administration's (NOAA) Storm Event Database (SED), which reports significant weather phenomena having sufficient intensity to cause loss of life, injuries, significant property damage, and/or disruption to commerce. The NOAA data reflected hail up to 7/8 inch on August 1, 2015, approximately 500 feet north of the property; hail up to one inch on August 22, 2018, less than ½ mile west of property, and one inch hail on September 2, 2018, approximately 15 miles northwest of property. *Id.* at 8.

Based on historical weather data and collateral indicators of hail impact, Mr. Platt concluded some damage occurred prior to 2017 and some after. According to Mr. Platt, "[b]ased on the collateral indicators, weather data, and firsthand accounts, hail up to 1 inch in diameter impacted the property September 2, 2018." *Id.* at 17.

In his report, he very specifically identified the damage and whether it occurred before or after August 1, 2017, and if it could be attributed to the September hailstorm. For example, he found that dents in the roll-up doors, south rolling door canopy south-facing metal flashing, first and third south elevation downspouts, HVAC condenser fins was due to hail impact after August 1, 2017. Damage to exhaust vent flaps, parking garage roof, trellis paint, swamp cooler metal duct, and gutters was due to hail impact, but it could not be determined whether the impact occurred before or after August 1, 2017. He found no hail damage to the office BUR roof covering. As for the manufacturing building, he concluded 1-inch-diameter bruises on the northeast portion and elsewhere were from the September 2, 2018, hailstorm, but bruises less than one inch at the southwest portion and elsewhere were from hailstorms occurring prior to August 1, 2017. He also noted that the

1   "roof surface is sloped less than the IBC minimum and is inadequate for effective
2   drainage." (MSJ, SOF, Ex. E: Donan Report (Doc. 85-2) at 17-18.)

3       On April 26, 2019, Defendant's claim adjuster, Specialist Mr. Wakefield, sent an
4   email to Plaintiff's private adjuster, saying: "I have completed review of our claim file.
5   Hail damage was concluded in our engineer's report. I am now proceeding with scheduling
6   our hired consultant to inspect the roof and complete a damage scope." (Resp. SOF, Ex.
7   16: email (Doc. 90-8) t 71); *see also* Claim File note 4/26/2019 (Wakefield)(proceeding to
8   hire Tines Group to determine roof damages scope and bid out job; "communicated plan
9   of action to insured PA"). This was done, and State Auto's contractor, the Tines Group,
10  estimated hailstorm roof damage for September 2, 2018, at $353,181. (Resp., SOF, Ex. 18:
11  Tines Group Estimate (Doc. 90-8) at 97.)

12      3. <u>Defendant denies claim: Donan Report and Plaintiff's suspicious claim
13         behavior.</u>

14      The Defendant did not, however, move forward to formally approve and pay the
15  claim. Instead, it hired Augspurger Komm Engineering, Inc. to conduct another site review
16  on June 11, 2019, and prepare a report, the Springer Report, on July 18, 2019. State Auto
17  denied the claim on July 26, 2019. (Resp., SOF, Ex. P: D Expert, DiCiancio Report (Doc.
18  85-4) at 74, 77.) State Auto, accidentally attached the Donan Report instead of the Springer
19  Report to the denial letter. (Resp., SSOF ¶ 125.)

20      In the Motion for Summary Judgment, the Defendant refers the Court to "ACS's
21  own standard of care expert witness McNeil, [who] testified that the Donan Engineering
22  report was inconclusive and that there was a dispute about when hail damage occurred."
23  (MSJ (Doc. 84) at 6 (citing DSOF ¶ 53; SOF, Ex. J: McNeil depo at 52:1-7, 80:23-81:20,
24  83:13-25, 84:5-18, 86:9-15, 87:3-15)). There is no support found in these cited portions of
25  Mr. McNeil's deposition to support the assertion that the Donan Engineering report failed
26  to identify when hail damage occurred. Mr. McNeil's deposition review of the Donan
27  Report reflects the record similar to that referenced by the Court above. The Donan Report
28  parsed damage to the property between two hailstorms occurring before, August or after

August 2017: August 1, 2015 and September 2, 2018. He specifically identified damage that he concluded was unrelated to either hailstorm.

According to Defendant, "ACS's vice president Guy Mattern confirmed that Platt's report did not inform him as to "when" the damage may have occurred." *Id.* (citing DSOF ¶ 55). This deposition reference includes Mattern's admission that he skimmed the Donan Report; his lay opinion is that it found hailstorm damage; and he, Mattern, did not know when the damage occurred.

For the first time in the Reply, State Auto references, without citation, a weather report that shows a July 2017 storm to support its assertion that "engineers involved disagree about *when* damage occurred." (Reply (Doc. 91) at 5.) Here, "is at least one significant storm before the inception of ACS's Policy with State Auto and damage caused in July 2017 would not be covered by the Policy." *Id.* This was not a date considered in the Donan Report or the Springer Report. It appears to come from a NEXRAD, Historical Storm Activity report provided by the Plaintiff which reflects a July 28, 2017 hailstorm with one-inch hail within one mile of the property; the hail size at the property was .50 inches. (Resp., SOF, Ex. 10: Historical Storm Activity (Doc. 90-7) at 13.) Because the July 2017 storm is raised in the Reply, the Court does not consider it to assess the merits of State Auto's summary judgment motion, but notes that this weather data report, like all the others included in this record, make it clear that hail data is not reported to a certainty. For example, "Interactive Hail Maps (IHM) uses NEXRAD weather radar data and proprietary hail detection algorithms to generate the "Hail Impact" and "Historical Storm Activity" information included in this report. And while IHM attempts to be as accurate as possible., IHM makes no representations or warranties of any kind, including express or implied warranties, that the information in this report is accurate, complete and/or free of defect." *Id.*

To be clear, weather data reports are not magic bullets for determining hailstorm damage claims. They help answer the question of whether a significant hail event occurred at a specific location during a period of time. It is undisputed that the property was covered

1  by State Auto beginning August 2017. The Donan Report speaks for itself, including Mr. Platt's date of loss findings. In the Donan Report, the only hailstorm damage that could not be dated as occurring before or after August 2017, was "to exhaust vent flaps, parking garage roof, trellis paint, swamp cooler metal duct, and gutters." *Supra. above.* To this limited extent, the Donan Report was arguably inconclusive.

Concerns regarding roof-slope inadequacy for effective drainage is a red herring because it is not relevant to the question of whether there was hailstorm damage to parts of Plaintiff's buildings and when any such damage occurred either before or after August 2017. Defective slope is relevant to repair and replacement determinations once coverage is established; "[f]or reroofing applications, the IBC requires reroofing materials and installation methods meet the same requirements as new construction." (MSJ, SOR, Ex. E: Donan Report (Doc. 85-2) at 15.) In other words, building standards must be met for the repair and replacement work if coverage exists, even if the damaged roof was defective. Therefore, as Plaintiff's expert McNeil agreed, the alleged defective roof slope may have warranted further investigation, (MDJ) (Doc. 84) at 6 n.5), but this needed additional investigation was not due to the Donan Report being inconclusive as to the date of loss.

It is undisputed that the Donan Report was inconsistent with Defendant's claim adjuster, Mr. Romero's opinion that all the hailstorm damage on Plaintiff's property occurred prior to 2017; the Donan Report was ordered specifically to address this concern expressed by Mr. Romero.

The Defendant wrongly asserts that the Donan Report is internally inconsistent because it reflects "'damage to BUR roofs occurs with hail 2 inches or greater' and then concluded that there was damage to BUR roof while weather reports do not show any storm of size *even close* to 2 inches." (Reply (Doc. 91) at 4 (quoting and citing (MSJ, SOF, Ex: E: Donan Report (Doc. 85-2) at 14, 16)) (emphasis in original). The Donan Report expressly concludes: "No hail damage is on the office BUR roof covering. Surface abrasions are due to age-related deterioration." *Id.* at 16), *see also* Summary of Conclusions at 18 (same).

It is undisputed that the Donan Report and the Springer Report prepared by Augspurger Komm Engineering, Inc. are inconsistent. Mr. Springer found the hailstorm history for the property reflected several occasions of minor/inconsequential events, including the September 2, 2018, storm. "The largest hail experienced by the property occurred in August 2015 and was on the order of 5/8 of an inch in diameter. No hail stone impact damage is present on either roofing system." (MSJ, SOF, Ex: N: Springer Report (Doc. 85-4) at 11, 14, 15.) State Auto secured the second Springer Report after obtaining the Donan Report; the Springer Report did not identify any alleged inconsistencies in the Donan Report findings or address the tests and pictures compiled by Mr. Platt in the Donan Report.

The Donan Report alone suffices to raise a material issue of fact regarding the breach of contract claim. A jury might conclude that it reflects a hailstorm on September 2, 2018, caused damage to Plaintiff's property in part, and at that time the property was covered by the August 9, 2018, through August 9, 2019 policy. The alleged inconsistencies or inconclusiveness of the Donan Report remain arguments going to the question of bad faith. The parties argue contrary to each other: Defendant justifying its further investigation of the claim, and Plaintiff asserting the bogus investigation shows bad faith.

Similarly, both sides argue different conclusions should be drawn from State Auto's investigation into the allegedly inconsistent and inconclusive Donan Report. State Auto argues the merits of hiring another engineering loss report, the Springer Report, because when it contacted Donan engineering to ask questions, it discovered that Mr. Platt was no longer employed there. According to Mr. Wakefield, he was, therefore, unable to obtain clarification regarding the Donan Report. The Plaintiff disputes the sincerity of this explanation for preparing the second engineering investigation and Springer Report. The Defendant made one telephone call to Donan Engineering to resolve the alleged inconsistencies and inaccuracies in Mr. Platt's report. (Resp. SOF, Ex. 11: Claim File note 4/15/2019 (Wakefield) (85-3) at 122 (called engineer, Marcor Platt, Donan Engineering, today and left a voice message)). Admittedly, he mistakenly failed to record the Donan

communication in the claim file record and could not remember more than the fact that he had called and was told Mr. Platt was not employed there. Mr. Wakefield admitted he made no other attempts beyond the single telephone call to contact or secure contact information for Mr. Platt. (Resp, SOF, Ex. 17: Wakefield Depo. at 45-47 (Doc. 90-8) at 78-80.)

According to State Auto, "[o]n August 22, 2015, the Benchmark Hail History Report informed State Auto of a 65% chance that hail of 1-inch in diameter fell on ACS's Property then." (MSJ (Doc. 84) at 2 (citing (DSOF ¶ 7). "State Auto's investigation uncovered that soon thereafter, ACS's representative attempted to file a hail-damage claim with ACS's insurance agent O'Neil from Koty-Leavitt agency." *Id.* at 2-3 (citing DSOF ¶ 8). In other words, State Auto argues that its claim investigation revealed that ACS's representative attempted to file a hail-damage claim for a loss date in 2015 shortly after State Auto gave ACS the Benchmark Hail History Report that reflected the only major hailstorm event to hit the property occurred on August 22, 2015, which was a time period when it did not even own the property and State Auto was not the insurance carrier.

Agent O'Neil's deposition expressly disavows any assertion that there was ever any attempt to file a hail claim in 2015. (MSJ, SOF, Ex.F: O'Neil Depo. at 42 (Doc. 85-2) at 76.) It is undisputed that there is no State Auto claim file with an alleged loss date of August 22, 2015. The claim file note from May 22, 2019, reflects: Mr. O'Neil was the agent on the account since 2001 through the time of the sale and currently; contact information for Norman Franzen was obtained, and that he "attempted to file a roof/exterior hail claim with the agent on August 22, 2015. He attempted to file a claim even though his company did not yet own the company. Agent Brian informed him they had no financial interest in company and could not pursue claim. I asked why the current owner in 2015 did not file and pursue the claim. They had no answers in the file. On July 11, 2018, they attempted to file another hail claim with us regarding 6/16/2018 date of loss, []. However, our adjuster investigated and informed them there was no hail on this date. They then filed the current claim for the loss date, 9/2/2018." (Resp, SOF, Ex. 11: Claim File note 5/22/2019 (Wakefield) (Doc. 90-7) at 58.)

The only evidence for this claim comes from the string of emails beginning around June 25, 2018, with Norm Franzen asking Mr. O'Neil for a copy of the ACS International policy because he had been told there was some hail damage in "the last storm." 23-24; 71 Guy Mattern emailed Mr. O'Neil that he would be the point of contact. *Id.* at 24. This string of emails reflects the claim filed in July 2018 for a hail loss date of June 16, 2018. As noted above, Defendant's adjuster, Mr. Romero, sent the CoreLogic hailstorm report to Mr. O'Neil by email, July 11, 2018, which reflected no hail falling at the property on June 16, and this claim was ultimately closed due to Plaintiff's failure to pursue it.

Defendant relies on an email towards the end of the string, sent September 18, 2018, by Mr. Mattern to Mr. O'Neil, which reads: "The adjuster that was sent out here, but never actually came out, sent a CoreLogic report to my contractor that is missing numerous hail storms that came through this area; namely, the June 2018 storm that caused visible damage to a new vent we just installed in August 2017, and the June 2015 storm, one of the biggest to hit Tucson in decades. Please file a wind/hail claim on *our previous policy* and please let me know when an adjuster has been named to this claim." (MSJ, SOF, Ex.F: O'Neil Depo. at 49-50 (Doc. 85-2) at 78) (emphasis added). Defendant argues that this email shows Guy Mattern attempting "to file a coverage claim but did not reference the September 2018 storm at all and referenced only the June 2018 and the 2015 storms, requesting that O'Neil file the claim under an old policy with inapplicable policy dates." (MSJ (Doc. 84) at 3 (quoting SOF ¶21) (citing Ex. F: O'Neil depo.)). "State Auto's investigation uncovered that . . . ACS's representative attempted to file a hail-damage claim with ACS's insurance agent O'Brian from Koty-Leavitt agency." *Id.* at 2-3. *See also* (Reply (Doc. 91) at 5-6 (quoting O'Neil Depo.))

When Mr. O'Neil was deposed, he was asked about the September 18, 2018, email, wherein Mr. Mattern wrote: "Since we are having issues with dates of loss on this current claim, which would be involving the 6/16/18 claim, . . . "[w]e would like you to file the claim under our old policy." (MSJ, SOF, Ex.F: O'Neil Depo. at 48 (Doc. 85-2) at 77.) Mr.

- 12 -

O'Brien was asked: "The old policy would have been the EMC policy?" He answered: The old policy, I believe in his reference here was the prior owner's policy[,] State Auto." *Id.*

The Defendant's position that State Auto's investigation lead to a reasonable suspicion that the Plaintiff was trying to commit insurance fraud is arguably disingenuous. For Plaintiff, the facts surrounding the Defendant's handling of the claim due to an allegedly improper filing of a 2015 hailstorm claim shows the Defendant acted in bad faith. The Plaintiff notes that Mr. Wakefield admitted during his deposition that he never attempted to confirm with Mr. Franzen whether he had ever attempted to file a roof hail damage claim for a loss in 2015 or for the loss date of August 22, 2015. Mr. Wakefield testified that he relied solely on the information he received from the agency because:

> The agency had been with Franzen, I believe, for 15, 16 years. The agent's assistant spoke from their claim -- from their agency files, I believe with the agent and agent assistant, had information they had provided to me. In fact, they had informed me that – that the claim -- they had -- Franzen had attempted to file a claim prior to owning the company and -- and that no follow-up of -- with the insurance companies at that time was conducted. So what I believed was what the agent had informed me, and there was no purpose to follow up with ACS.

(MSJ, SOF, Ex: Wakefield Depo. at 66 (Doc. 85-3) at 111.) The Plaintiff is critical of Mr. Wakefield's lax investigation into the substance of a fact State Auto relied on to further investigate and delay payment of the claim, and to ultimately deny the claim.

### D. Conclusion

Some of Defendant's motion for summary judgment simply asserts facts that are not in dispute but are facts that the parties are disputing as to what they show. The appropriate place for the Defendant to make such arguments is at trial. On summary judgment, this Court will not weigh the persuasiveness of evidence to establish various material questions of fact which must be resolved to prove the breach of contract and bad faith claims. State Auto carries the burden of showing that there is no genuine issue of material fact, therefore, the Court resolves all reasonable doubt as to the existence of a genuine issue of fact against State Auto and construes all inferences in favor of ACS International.

1    The law is undisputed. "The tort of bad faith in a first-party claim arises when an
2 insurance company: (1) intentionally denies, fails to process or pay, or delays payment of,
3 a claim without a reasonable basis; and (2) knows that it acted without a reasonable basis,
4 or fails to perform an investigation or evaluation adequate to determine whether its action
5 was supported by a reasonable bases." (MSJ (Doc. 84) at 8 (citing *Noble v. Nat'l Am Life
6 Ins. Co.,* 624 P.2d 866, 868 (Ariz. 1981); *see also Miel v. State Farm Mut. Automobile Ins.
7 Co.,* 912 P.2d 1333, 1339 (Ariz. App. 1995)). "Insurance contracts include an implied
8 covenant of good faith and fair dealing that requires the parties to refrain from any conduct
9 that would impair the benefits or rights expected from the contractual relationship." (Resp.
10 (Doc. 89) at 11 (citing *Rawlings v. Apodaca*, 726 P.2d 565, 570 (1986)). Parties must
11 "refrain from any conduct that would impair the benefits or rights expected from the
12 contractual relationship," *id*., and obligates the insurer to "immediately conduct an
13 investigation, act reasonably in evaluating the claim, and act promptly in paying a
14 legitimate claim." *Zilisch v. State Farm Mut. Ins. Co*., 995 P.2d 276, 280 (2000).

15    Both parties agree that the appropriate inquiry on summary judgment is "whether
16 there is sufficient evidence from which reasonable jurors could conclude that in the
17 investigation, evaluation, and processing of the claim, the insurer acted unreasonably and
18 either knew or was conscious of the fact that its conduct was unreasonable." (MSJ (Doc.
19 84) at 8) (quoting *Bjornstad v. Senior Am. Life Ins. Co.,* 599 F.Supp 2d 1165, 1174 (Ariz.
20 2009)); (Resp. (Doc. 89) at 12 (quoting *Zilisch v. State Farm Mutul Ins. Co.,* 995 P.2d 276,
21 279 (Ariz. 2000)). The Plaintiff has rebutted the Defendant's assertion on summary
22 judgment that there is no such evidence. There are material questions of fact in dispute
23 regarding the reasonableness of State Auto's handling of Plaintiff's claim. At trial, the
24 Defendant may present the facts it argues here show suspicious behavior by the Plaintiff,
25 such as: ACS not inspecting its roof until November 2018 despite alleged flooding in
26 September and taking six months to file a claim from the September 2018 storm. The
27 Plaintiff's bad faith arguments may or may not rely on the same facts relied on by the
28 Defendant or include other facts, such as: State Auto's conduct in securing the second

engineering referral from attorney Dicaro at a time when State Auto was supposed to be conducting an independent unbiased investigation; Mr. Springer's orientation biased his report, and Mr. Springer contradicted Mr. Platt's findings without addressing the foundational test results and pictures contained in the Donan Report.

In short, summary judgment is not appropriate in this case because there are material issues of fact that must be resolved by a jury. The question of whether punitive damages are appropriate is better answered by the jury after a full hearing of the facts at the time of trial. An insured may recover punitive damages on a bad faith claim; the insured must prove that the insurer's wrongful conduct was guided by an "evil mind." *Walter v. Simmons*, 818 P.2d 214, 225–26 (Ariz. App.1991). This requires evidence showing that the insurer either: "(1) intended to injure the [insured], (2) was motivated by spite or ill will, or (3) acted to serve [its] own interest, having reason to know and consciously disregarding a substantial risk that [its] conduct might significantly harm [insured]." *Id*. (Resp. (Doc. 89) at 14-15.)

Summary judgment is not appropriate to decide the question of punitive damages if "a reasonable jury could find the requisite evil mind by clear and convincing evidence." *Thompson v. Better–Bilt Aluminum Prods. Co.,* 832 P.2d 203, 211 (1992). The Court agrees with the Plaintiff that the evidence supporting Plaintiff's claim of bad faith is sufficient to overcome summary judgment on punitive damages because a reasonable juror might find that State Auto was "consciously aware of the evil of [its] actions, of the spitefulness of [its] motives or that [its] conduct is so outrageous, or intolerable in that it creates a substantial risk of tremendous harm to others." (Resp. (Doc. 89) at 14-15 (citing *Thompson*, 832 P.2d 203).

**Accordingly,**

**IT IS ORDERED** that the Motion for Summary Judgment (Doc. 84) is DENIED.

**IT IS FURTHER ORDERED** that this case is ready for trial, and the parties have 30 days from the filing date of this Order to file the Proposed Joint Pretrial Order.

**IT IS FURTHER ORDERED** that the parties shall contact the Court in the event they want to attempt to settle the case and would like the case referred to a Magistrate Judge to serve as a settlement judge.

Dated this 4th day of May, 2022.

Honorable David C. Bury
United States District Judge